

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### Nos. PD-1069-09 & PD-1070-09

**SAMUEL SCOTT, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

HOLCOMB, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. JOHNSON, J., filed a concurring opinion, in which COCHRAN, J., joined. KELLER, P.J., filed a dissenting opinion. MEYERS, J., did not participate.

The court of appeals held that two subsections of our harassment statute, Texas Penal Code

§ 42.07, were unconstitutionally vague on their face. We reverse.

On April 24, 2006, in Bexar County, Samuel Scott was charged by information with one

count of harassment, a misdemeanor offense. The information alleged, in relevant part, that:

"on or about the 5th Day of December, 2005, Samuel Scott, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did make repeated

communications to the complainant, to wit: telephone calls, in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend the complainant."

On July 11, 2006, again in Bexar County, Scott was again charged by information with harassment. The information alleged, in relevant part, that:

"on or about the 12th Day of March, 2006, Samuel Scott, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did make repeated telephone communications to the complainant in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend the complainant, to wit: the defendant called the complainant repeatedly by telephone while intoxicated, late at night, leaving abusive and harassing voice mail messages."

Sometime thereafter (the record does not reveal the exact date), Scott filed a motion to quash the two charging instruments. In his motion, Scott, citing both the First and Fourteenth Amendments to the United States Constitution, argued that Texas Penal Code § 42.07, the statute under which he was charged, was unconstitutional on its face[1] because it was both unduly vague and overbroad.[2] He argued further that the statute's vagueness and overbreadth threatened "to induce individuals to forgo [their] First Amendment rights [to free speech] for fear of violating an unclear law." Scott,

---

[1] A statute may be challenged as unconstitutional "on its face" or "as applied." A claim that a statute is unconstitutional "on its face" is a claim that the statute, by its terms, always operates unconstitutionally. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n. 2 (Tex.Crim.App. 2006). A claim that a statute is unconstitutional "as applied" is a claim that the statute operates unconstitutionally with respect to the claimant because of his particular circumstances. *Id.* at n. 3.

[2] A statute may be challenged as unduly vague, in violation of the Due Process Clause of the Fourteenth Amendment, if it does not: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) establish definite guidelines for law enforcement. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App. 1989). A statute may be challenged as overbroad, in violation of the Free Speech Clause of the First Amendment, if, in addition to proscribing activity that may be constitutionally forbidden, it sweeps within its coverage a substantial amount of expressive activity that is protected by the First Amendment. *Morehead v. State*, 807 S.W.2d 577, 580 (Tex.Crim.App. 1991).

citing our decision in *Long v. State*, 931 S.W.2d 285, 288 (Tex.Crim.App. 1996), noted that "when [as here] a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct." Notably, Scott did not argue that § 42.07 was vague as applied to his conduct, i.e., that the statute failed to give him a reasonable opportunity to know that the conduct for which he was charged was prohibited.[3]

On June 25, 2008, the trial court held a hearing on Scott's motion to quash. Neither Scott nor the State presented any evidence at that hearing. Just after the start of the hearing, Scott explained to the trial court that he believed that the April 24, 2006 information had been brought under Texas Penal Code § 42.07(a)(4), whereas he believed that the July 11, 2006 information had been brought under § 42.07(a)(7).[4] Toward the end of the hearing, Scott, when queried on the matter

---

[3] Ordinarily, a criminal defendant who challenges a statute as unduly vague must show that it is vague as applied to the conduct for which he was charged. *Parker v. Levy*, 417 U.S. 733, 756 (1974); *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Crim.App. 1989). However, if the challenged statute implicates the free-speech guarantee of the First Amendment – i.e., if the statute, as authoritatively construed, is susceptible of application to speech guaranteed by the First Amendment – then the defendant is permitted to argue that the statute is overbroad on its face because it is unclear whether it regulates a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 304 (2008); *Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972). This exception to the usual rule is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights. *Gooding v. Wilson*, 405 U.S. at 521. In the cases before us today, Scott's argument, as we understand it, is that § 42.07 is overbroad on its face because its inherent vagueness makes it unclear whether it prohibits a substantial amount of protected speech.

Note: In this opinion, we use the word "speech" and the phrases "communicative conduct" and "expressive activity" interchangeably; in the First Amendment context, they mean the same thing.

[4] Texas Penal Code § 42.07 provides, in relevant part:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse,

(continued...)

by the trial court, appeared to concede that both charging instruments had been brought under § 42.07(a)(4).

As for the substance of his motion to quash, Scott reiterated the arguments that he had made in his written motion. In addition, he argued that: (1) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague and overbroad on their face because the terms "annoy" and "alarm" included in those statutory subsections were "inherently vague"; (2) neither statutory subsection clearly indicated "whose sensibilities must be offended"; (3) neither statutory subsection clearly indicated "the standard by which the [prohibited] conduct [was] to be assessed"; and (4) the specific intent elements included in the statutory subsections did not save them from vagueness.

The State, in response, did not address the merits of Scott's arguments. Instead, the State argued simply that "[t]here is no court that has any jurisdiction over this specific [trial] court that has ruled that specific statute to be unconstitutionally vague."

---

[4](...continued)
torment, or embarrass another, he:

\*   \*   \*

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

\*   \*   \*

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

(b) In this section:
(1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system. The term includes:
(A) a communication initiated by electronic mail, instant message, network call, or facsimile machine; and
(B) a communication made to a pager.

At the conclusion of the hearing, the trial court denied Scott's motion to quash. Shortly thereafter, Scott pled nolo contendere, pursuant to a plea bargain, to each harassment charge. The trial court then assessed Scott's punishment in each case at incarceration for two days and a $50 fine.

On direct appeal, Scott reiterated the arguments that he had made in the trial court. In addition, he argued, for the first time,[5] that: (1) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague as applied to his conduct (although he failed to explain *how* they were unconstitutionally vague as applied to his conduct); and (2) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague and overbroad because the terms "abuse," "torment," "embarrass," and "repeated" included in those statutory subsections were "inherently vague."[6]

The State, in response to Scott's arguments, argued that: (1) both charging instruments tracked the language of § 42.07(a)(4) and charged Scott under that statutory subsection; (2) § 42.07(a)(4) was neither unconstitutionally vague nor overbroad; (3) § 42.07(a)(4) did not implicate the free-speech guarantee of the First Amendment; and (4) "the fact that [Scott] chose [in the trial court] not to challenge the statute as applied to [his conduct] constitute[d] a failure to preserve [that] issue for appellate review."

---

[5] Scott's arguments, because they were untimely, were not preserved for appellate review. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex.Crim.App. 2006); Tex. R. App. Proc. 33.1.

[6] In the court of appeals and in this Court, Scott relies primarily upon *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983), *reh'g en banc granted*, 716 F.2d 284 (5th Cir. 1983), *grant of relief aff'd*, 723 F.2d 1164 (5th Cir. 1984); *Long v. State*, 931 S.W.2d 285 (Tex.Crim.App. 1996); *May v. State*, 765 S.W.2d 438 (Tex.Crim.App. 1989); and *Karenev v. State*, 258 S.W.3d 210 (Tex.App.–Fort Worth 2008), *rev'd on other grounds*, 281 S.W.3d 428 (Tex.Crim.App. 2009). In none of those cases, however, did the court address the primary question that we address today: whether § 42.07(a)(4), as currently written, implicates the free speech guarantee of the First Amendment.

The court of appeals agreed with Scott's arguments, reversed the trial court's judgments, and rendered judgments of acquittal. *Scott v. State*, 298 S.W.3d 264 (Tex.App.–San Antonio 2009). More specifically, the court of appeals held that: (1) the July 11, 2006 information, which involved allegations of harassing voice-mail messages, could have been brought under § 42.07(a)(7) because voice mail messages fell within the statutory definition of "electronic communication"; (2) § 42.07(a)(4) and (a)(7) both implicated the free speech guarantee of the First Amendment;[7] and (3) the terms "annoy," "alarm," "abuse," "torment," "embarrass," and "repeated" contained in the two statutory subsections were all unconstitutionally vague.[8]

We granted the State's petition for discretionary review, which raised six grounds,[9] in order

_____

[7] The court of appeals explained this particular holding as follows:

> "We hold that subsections (a)(4) and (7) do implicate First Amendment freedoms. What is 'annoying,' 'embarrassing,' or even 'alarming' may be protected speech. For example, political calls made repeatedly during election season could fall under subsection (a)(4) if the caller is intending to alarm the recipient concerning a particular candidate. Further, we note that subsection (a)(7)'s 'electronic communications' could encompass some talk radio and television programming." *Scott v. State*, 298 S.W.3d 264, 269 (Tex.App.–San Antonio 2009).

[8] *Scott v. State*, 298 S.W.3d 264, 267, 269, 270 (Tex.App.–San Antonio 2009).

[9] The State's petition covers both cases. The State's grounds read as follows:

(1) Are subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 unconstitutionally vague?

(2) Do subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 implicate the First Amendment to the United States Constitution?

(3) Are the term "repeated" and the phrase "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another," which are both contained within Texas Penal Code § 42.07(a)(4) and (a)(7), unconstitutionally vague?

(continued...)

to determine whether the court of appeals erred in its analysis. *See* Tex. R. App. Proc. 66.3(d).

We turn first to the State's fourth ground for review, in which the State argues that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7). The State argues that, contrary to the court of appeals's conclusion, the July 11, 2006 information against Scott charged him under § 42.07(a)(4), not (a)(7).

A careful reading of the July 11, 2006 information, which we quoted earlier, reveals that it tracks the language of § 42.07(a)(4), which we also quoted earlier, but not the language of (a)(7). Furthermore, the text of (a)(4) suggests that it covers ordinary voice (and therefore voice mail) communication involving an ordinary telephone, whereas the text of (a)(7) suggests that it covers various types of non-telephonic, "electronic" communication, e.g., e-mail, instant message, etc. Therefore, we conclude that the July 11, 2006 information against Scott was brought under § 42.07(a)(4) and that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7). We sustain the State's fourth ground for review.

We turn next to the State's second ground for review, in which the State argues that the court

---

[9](...continued)

(4) Did the State's allegation that appellant left "voice mail messages" implicate Texas Penal Code § 42.07(a)(7) in this case, and does that phrase necessarily fall within the definition of "electronic communication" found at Texas Penal Code § 42.07(b)(1)?

(5) If some part of Texas Penal Code § 42.07 is unconstitutionally vague, did the Court of Appeals err by declaring it vague and acquitting appellant instead of applying a narrow construction to the statute to avoid the alleged vagueness?

(6) Has the Court of Appeals improperly determined that because subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 allegedly implicate the First Amendment and might curtail protected speech those subsections are vague, when the proper question should have been whether the subsections are overbroad?

of appeals erred in concluding that § 42.07(a)(4) implicated the free-speech guarantee of the First Amendment. The question of whether the statutory subsection implicates the free-speech guarantee is important in the cases before us, because if the statutory subsection *does* implicate the free-speech guarantee, then Scott, in making his vagueness challenge, is relieved of the usual requirement of showing that the statutory subsection was unduly vague as applied to his conduct. *See* footnote three, *supra*.

To answer the question of whether § 42.07(a)(4) implicates the free-speech guarantee of the First Amendment, we must first determine the protection afforded by the free-speech guarantee, and then we must determine the meaning of § 42.07(a)(4). The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." This guarantee of free speech, which was made applicable to the various states by the Due Process Clause of the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666 (1925), generally protects the free communication and receipt of ideas, opinions, and information, *Red Lion Broadcasting Co. v. F. C. C.*, 395 U.S. 367, 390 (1969); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). In a nation of ordered liberty, however, the guarantee of free speech cannot be absolute. The State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner. *Cohen v. California*, 403 U.S. 15, 21 (1971).[10]

Turning to the meaning of § 42.07(a)(4), we find that, given the allegations in the charging instruments, the relevant portion of (a)(4) reads as follows: "A person commits an offense if, with

---

[10] *See* M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L. Rev. 1403, 1418 (1989) (The *Cohen v. California* "intolerability" standard is "useful [for] evaluating telephone harassment statutes.").

intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." We notice several things about that text.[11] First, the text requires that the actor have the specific intent to harass, annoy, alarm, abuse, torment, or embarrass the recipient of the telephone call. That is, the text requires that the actor have the intent to inflict harm on the victim in the form of one of the listed types of emotional distress. Second, the text requires that the actor make repeated telephone calls to the victim; one telephone call will not suffice.[12] Third, the text requires that the actor make those telephone calls in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend an average person.[13] Fourth, the text does not require

---

[11] When we interpret a statute, our constitutional duty is to determine and give effect to the apparent intent of the legislators who voted for it. In determining this apparent legislative intent, we focus our attention on the text of the statute and ask ourselves, how would ordinary legislators have understood that text? *Whitehead v. State*, 273 S.W.3d 285, 288 (Tex.Crim.App. 2008); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). We also presume that the legislators were aware of their constitutional obligations and intended a constitutional statute. *State v. Edmond*, 933 S.W.2d 120, 124 (Tex.Crim.App. 1996); 82 C.J.S. *Statutes* § 381 (2009).

[12] The term "repeated" is commonly understood to mean "reiterated," "recurring," or "frequent." *Webster's Ninth New Collegiate Dictionary* 998 (1988); 2 *Oxford English Dictionary* 2494 (1971). Here, we believe that the Legislature intended the phrase "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode," because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition. *See* M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L. Rev. 1403, 1430 (1989) ("Prudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect the recipient becomes more compelling.").

[13] The terms "harass," "annoy," "alarm," "abuse," "torment," "embarrass," and "offend" all have commonly understood definitions that are relevant in this context. "Harass" means "to annoy persistently." "Annoy" means to "wear on the nerves by persistent petty unpleasantness." "Alarm" means "to strike with fear." "Abuse" means "to attack with words." "Torment" means "to cause severe distress of the mind." "Embarrass" means "to cause to experience a state of

(continued...)

that the actor use spoken words.

Having examined the text of § 42.07(a)(4), we conclude that it is not susceptible of application to communicative conduct that is protected by the First Amendment. In other words, the statutory subsection does not implicate the free-speech guarantee of the First Amendment. The statutory subsection, by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress. Given that plain text, we believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words.[14] That is to

---

[13](...continued)
self-conscious distress." "Offend" means "to cause dislike, anger, or vexation." *Webster's Ninth New Collegiate Dictionary* 47, 68, 88, 405, 552, 819, and 1245 (1988).

[14] In *Jones v. Municipality of Anchorage*, 754 P.2d 275 (Alaska 1988), the court addressed the constitutionality, under the First Amendment, of a city ordinance that read: "It is unlawful for any person to anonymously or repeatedly telephone another person for the purpose of annoying, molesting, or abusing through patently offensive and profane language, or harassing that person or his family." The court upheld the ordinance, explaining, in relevant part, that the ordinance "restrict[ed] speech only when it [was] essentially noncommunicative – in other words, only when the speech [was] devoid of any substantive information and [was] solely and specifically intended by the speaker to evoke an adverse emotional response from the listener." *Id*. at 279.
In *State v. Thorne*, 333 S.E.2d 817 (W. Va. 1985), the court addressed the constitutionality, under the First Amendment, of a statute that read: "It shall be unlawful for any person to harass or abuse another by means of [a] telephone to . . . [m]ake repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number." The court upheld the statute, explaining, in relevant part: "Prohibiting harassment is not prohibiting speech, because harassment is not speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with an intent to communicate are not prohibited." *Id*. at 819.
In *State v. Elder*, 382 So.2d 687 (Fla. 1980), the court addressed the constitutionality, under the First Amendment, of a statute that read: "Whoever by means of telephone communication . . . [m]akes a telephone call, whether or not conversation ensues, without

(continued...)

say, in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake. To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.[15] We sustain the State's second ground for review.

Given our disposition of the State's second and fourth grounds for review, we need not reach the State's remaining grounds for review. We dismiss them.

Because § 42.07(a)(4) does not implicate the free-speech guarantee of the First Amendment, Scott, in making his vagueness challenge[16] to that statutory subsection, was required to show that it

---

[14](...continued)
disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number . . . shall be guilty of a misdemeanor." The court upheld the statute, explaining, in relevant part, that the statute was "not directed at the communication of opinions or ideas, but at conduct, that is, the act of making a telephone call or a series of telephone calls, without disclosing identity and whether or not conversation ensues, with the intent to annoy, abuse, threaten or harass the recipient of the call. That this conduct may be effected in part by verbal means does not necessarily invalidate the statute on freedom of speech grounds." *Id*. at 690.

[15] In *State v. Smith*, 392 N.Y.S.2d 968 (App.Div. 1977), the court addressed the constitutionality, under the First Amendment, of a statute that read: "[A person commits an offense] when, with intent to harass, annoy, threaten or alarm another person, he [c]ommunicates . . . with a person, anonymously or otherwise, by telephone . . . in a manner likely to cause annoyance or alarm." The court upheld the statute, explaining, in relevant part, that the statute "was intended to include . . . communications which are directed to an unwilling recipient under circumstances wherein substantial privacy interests are being invaded in an essentially intolerable manner." Id. at 791.

[16] As we explained in footnote three, supra, we understand Scott's argument to be that § 42.07(a)(4) is overbroad *because* it is inherently vague.

was unduly vague as applied to his own conduct.  He has not done that.  Therefore, his vagueness challenge fails.

We reverse the judgments of the court of appeals and affirm the judgments of the trial court.


DELIVERED OCTOBER 6, 2010

PUBLISH